Dr. Michael IRWIN, et al., Plaintiffs,

v.

ZILA, INC., et al., Defendants.

No. Civ.A. 01–D–709–N.

United States District Court,
M.D. Alabama,
Southern Division.

Sept. 10, 2001.

Benjamin H. Albritton, Rhon E. Jones, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, AL, Pat Huddleston, II, Jason L. Nohr, Dawson & Huddleston, II, Marietta, GA, for plaintiff.

Dan M. Durrant, Robert E. Miles, James A. Ryan, Louis A. Stahl, Quarles & Brady Streich Lang LLP, Samuel H. Franklin, Lightfoot, Anne Sikes Hornsby, Franklin & White, L.L.C., Birmingham, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is the Motion to Transfer ("Mot.") filed by Defendants Zila, Inc., Joseph Hines, and Dr. Ralph Green ("Defendants", "Zila", "Hines" and "Green") on July 31, 2001. Plaintiffs filed a Response on August 20, and Defendants filed a Reply on September 4. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion is due to be granted.

## I. FACTS

Plaintiffs are Alabama citizens who owned stock in Zila, a pharmaceutical com-

pany headquartered in Phoenix, Arizona. (Compl.¶¶ 8, 9.) They bring this action alleging that Zila, its C.E.O. Hines, and the president of its biomedical branch Green violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, Rule 10b–5 promulgated thereunder, and Alabama's "Blue Sky" laws.[1] (*Id.* ¶ 5.) Specifically, they allege that Defendants made fraudulent misrepresentations with respect to the possibility of FDA approval of Zila's product Oratest, a mouthrinse used to assist dentists in the screening of oral cancer. (*Id.* ¶ 2.) Because of these alleged misrepresentations, Plaintiffs assert that the price of Zila stock was artificially inflated and that, when the FDA finally reported that Oratest was not ready for approval, the Zila stock decreased by forty-four percent in a single day. (*Id.* ¶¶ 2–3.)

A class action previously had been filed against Defendants in the District of Arizona, but Plaintiffs chose to opt out before it was settled. (Mot. at 2–3.) Prior to settlement in that case, virtually all the pretrial procedures had been completed, including discovery. (*Id.* at 15.) Discovery involved the production of more than 80,000 pages of documents, many of which pertained to the pendency of the FDA approval status of Oratest. (*Id.* at 4.) The class action related entirely to claims under the Securities Exchange Act; there were no Alabama claims. (*Id.* at 15–16.) Based on these facts, Defendants filed the present Motion to Transfer to the District of Arizona under 28 U.S.C. § 1404.

## II. DISCUSSION

■ "For the convenience of the parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it

---

1. The foregoing are codified, respectively, at 15 U.S.C. §§ 78j(b), 78t(a); 17 C.F.R. § 240.10b–5; Ala.Code §§ 8–6–17, 8–6–19.

might have been brought." 28 U.S.C. § 1404(a). Resolution of a Section 1404 Motion involves a two-step analysis. The first step is to "determine whether the action could originally have been brought in the transferee forum." *Folkes v. Haley*, 64 F.Supp.2d 1152, 1155 (M.D.Ala.1999). Insofar as Defendants reside in the District of Arizona, the parties do not contest that venue would be proper there. *See* 15 U.S.C. § 78aa (stating that venue for securities litigation is proper "in the district wherein the defendant is found"). Rather, the parties dispute the second prong, namely whether the District of Arizona would be a more convenient forum in which to litigate than the Middle District of Alabama.

■■■ The burden is on the moving party to prove that a case should be transferred, *Sizemore v. Able Body Temp. Servs.*, 981 F.Supp. 1451, 1453 (M.D.Ala. 1997), and this burden is high when a defendant asks the court to transfer a case from the plaintiff's home forum. *Owens v. Blue Tee Corp.*, 177 F.R.D. 673, 679 (M.D.Ala.1998).[2] In determining whether a defendant has met this burden, the court is to consider the following factors:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious, and inexpensive.... The court will weigh relative advantages and obstacles to fair trial.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). It is important to note, however, that these factors provide no mechanical test; rather, the court must engage in "an individualized case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

■■■ The present case turns on two central issues. The first is the extent to which Defendants misrepresented the FDA status of Oratest, and the second is their state of mind in doing so. Thus, the relevant proof will include records of the statements made by Defendants, witnesses who can attest to the FDA application process, and the testimony of Defendants themselves. On the other hand, the parties do not contest Plaintiffs' reliance upon Defendants' statements and/or omissions. In fact, in the briefs surrounding Defendants' Motion To Dismiss, there is no indication that Plaintiffs' testimony will provide anything beyond foundational evidence. In short, the core of the litigation will turn on the testimony of Defendants and of the Zila employees should this case come to trial. The fact that most of these witnesses reside in Arizona is of considerable importance since "the forum in which the majority of material principal witnesses reside is the most convenient forum." *Owens*, 177 F.R.D. at 679.

In light of the central issues which would arise in a subsequent trial, consideration should be given to Defendants' documentary evidence as well. Certainly such evidence is portable, but transporting 80,-000 pages of documents undeniably poses a considerable burden upon Defendants. Plaintiffs have not indicated that they

---

**2.** It should be noted that the high burden imposed upon defendants has been criticized on the ground that the bar unnecessarily has been set too high. The standard is a vestige of the forum non conveniens analysis wherein the harsh remedy of dismissal was granted to moving defendants rather than a mere transfer of venue. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3848, at 391–93. In the matter at hand, Defendants do not contest the applicability of this high standard. For present purposes, it is enough to say that the court refuses to allow a plaintiff's choice of venue to prevent an otherwise meritorious case of transfer under Section 1404.

would bear such a burden, nor have they given the court any reason to believe that much physical evidence would need to be produced on their end. While by no means overwhelming, this factor also weighs toward transferring the case to Arizona, especially since Plaintiffs have provided no reason of convenience why the court should not transfer the present matter beyond the fact that they filed the suit in their home forum.[3] The court will defer to this fact only when there are no countervailing interests.

Considerations of justice also point toward transferring the present matter to Arizona. Arizona has an interest in demanding that its resident corporations adhere to a level of protocol in conducting their business activities, especially when the alleged misdeeds took place within that forum. Certainly Alabama, too, has an interest in protecting its citizens from the fraudulent statements, but in an age where statements made in one forum can effect the market value of stocks nationwide, concerns of judicial economy need due consideration. In this light it is important to consider that Plaintiffs would have already litigated in Arizona had they not opted out of the class action. Had Plaintiffs filed during the pendency of the class action, there is good reason to believe the court would have transferred their case to the District of Arizona. *See River Road Int'l, L.P. v. Josephthal Lyon & Ross, Inc.*, 871 F.Supp. 210, 214 (S.D.N.Y.1995) (finding

that even should plaintiffs opt out of a class action pending in another forum, concerns of judicial efficiency still favored case management by that trial court).

The mere fact that Plaintiffs waited until after the class action settled does not negate the efficiency and considerations of justice favoring transfer to Arizona. The court does not purport to penalize parties for choosing to exercise control over their own litigious fate, but neither will it reward tactics that impede the efficient effectuation of justice. The class action recently settled, so the present issues should still be familiar to the District of Arizona. This is especially the case given the extent to which discovery and other pretrial matters had progressed. The central factual issues in the present matter are the same; that different plaintiffs may have been misled is immaterial to the core issues to be examined. It is in the interest of overall judicial economy that various district courts not be required to reinvent the wheel when different cases arise out of the same nucleus of operative facts.

Admittedly the Alabama state law claims are novel issues for the Arizona court. These claims, however, arise out of the very same facts as the federal claims so they involve no additional burden upon the transferee court beyond the application of the law to those facts. Notably the relevant Alabama statutes are modeled after the Securities Act, so there should be no concern as to misinterpretation.[4] It

---

**3.** Plaintiffs' Response attempts to appeal to the court's sympathies by asserting that the travel expenses resulting from litigation would be more appropriately borne by Defendants given the relative wealth disparities between the parties. However, no evidence was proffered to support these conjectures. (Response at 17.) Furthermore, there is reason to believe that Plaintiffs' evidence could be offered in the form of affidavits, thus obviating any travel expenses. As such, the court refuses to find that Plaintiffs have demonstrated

an unnecessary inconvenience to litigating their claims in Arizona.

**4.** The Comment following Section 8–6–17 of the Alabama Code reads as follows:

Because section 8–6–17(a) is identical in all respects to SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, other than the insertion of the word, "offer", and thus implies an available remedy for both purchasers and sellers of securities as a complement to the express remedies of section 8–6–19, no further revisions to section 8–6–17(a) were deemed

has been suggested that, in diversity cases the appropriate forum is the district of a state whose law is to govern given the judge's familiarity with the state law. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3854, at 466–68. It should be noted, however, that the Middle District of Alabama has never published an opinion on the relevant state codes, so there is no reason to believe that a court here would be any more competent in deciding the present matter than would the court in the District of Arizona. To the contrary, the latter's experience with the facts of the present matter make it better equipped to address any viable state law claims.[5]

Plaintiffs worry that the court's conclusion creates a general rule whereby a foreign corporation may always transfer a case to its home state given the location of documents there. This worry is unfounded. Similarly, the court's ruling does not stand for the proposition that plaintiffs who opt out of class actions can always be required to litigate in the forum of the class action. In finding transfer appropriate, the court merely observes that the central elements of this particular cause of action have occurred in a forum in which the key witnesses reside and where crucial evidence is located. Actions between parties from different states will always impose a burden on some of the parties, and it is in the court's broad discretion to examine the relative burdens on all parties involved to determine the most conve-

nient forum. *Merritt v. Jay Pontiac–GMC Truck*, 952 F.Supp. 754, 755–56 (M.D.Ala.1996). In addition to consideration of convenience to the parties, concerns of judicial economy and fairness militate in favor of transfer to a venue with an acute familiarity with the underlying cause of action. Accordingly, the court finds that Defendants have met their burden of establishing that the District of Arizona is a significantly more convenient venue than Alabama.

### III. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion To Transfer be and the same is hereby GRANTED and that this case be and the same is hereby TRANSFERRED to the United States District Court for the District of Arizona.

The clerk of the court is DIRECTED to take the necessary steps to effectuate said transfer.

---

necessary to effectuate the remedial purposes of the Act.
Comment, Ala.Code § 8–6–17 (1975). Furthermore, Alabama courts have looked to federal case law construing § 12(2) of the 1933 Securities Act in interpreting Section 8–6–19. *See, e.g., Ryder Int'l Corp. v. First Am. Nat'l Bank*, 749 F.Supp. 1569 (N.D.Ala.1990), *aff'd*, 943 F.2d 1521 (11th Cir.1991).

5. To the extent that the merit of Plaintiffs' state law claims cannot be determined definitively, the District of Arizona is directed to Rule 18 of the Alabama Rules of Appellate Procedure. Therein are laid out the procedures whereby a federal court may certify a novel proposition of state law to the Supreme Court of Alabama.